# HILLSBOROUGH,

## JULY TERM, A. D. 1847.

### CLOUGH *v.* RAY.

If one, having license from the owner of land to enter and cut and make staves, at a certain sum to be paid for each stave, enter and make a quantity, and in a reasonable time tender the price, the staves are his property; and he may maintain trover against the owner of the land, who, after such tender, converts them to his own use.

In order to ascertain the number of staves so made, and for which the tender is to be made, it is not necessary that they should be counted by a sworn culler of staves, or that notice should be given to the owner of the land before the count.

TROVER, for 12,000 staves. Testimony was introduced by the plaintiff, tending to show that during the winter

preceding the date of the writ, the defendant agreed to let the plaintiff cut trees on his wood-lot, in Manchester, for staves, at half a cent for each stave, and nothing was said about any credit; that in pursuance of that agreement, the plaintiff, in the months of February and March, 1845, went upon the defendant's lot, and cut trees and made staves to the number of 8990; that in April, 1845, one David G. Lull, who was a cooper, but not a sworn officer, at the request of the plaintiff, and without the knowledge of the defendant, counted the staves, and this was all the testimony as to the number. On the 8th day of December, 1845, the plaintiff tendered to the defendant $54 for the said staves, which the defendant refused to accept. Between the 10th and 15th of December, 1845, the defendant drew away the staves from the place where they were cut, to the depot in Manchester. On the 19th of December, while the defendant was passing in the street in his sleigh, the plaintiff stopped him and said, "I demand those staves," without further describing what staves he referred to, and the defendant said, "You shan't have them."

The defendant moved the court to rule that the aforesaid testimony did not support the plaintiff's action; but the court instructed the jury that if the testimony was believed, the action was maintained, and a verdict was rendered for the plaintiff.

Because of said instructions, the defendant moved that the verdict be set aside, and a new trial granted.

*W. C. Clarke,* for the defendant.

*D. Clark,* for the plaintiff.

GILCHRIST, J. The defendant gave the plaintiff license to enter, and cut and make staves. For this the plaintiff was to pay at the rate of half a cent for each stave that he should so make. Having proceeded so far under the

license as to enter and manufacture the staves, it was not in the defendant's power to deprive him of the benefit of what he had done. *Woodbury* v. *Parshley*, 7 N. H. 237; *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 102.

It was necessary, however, for the plaintiff, in a reasonable time, to pay or tender the price at which he had agreed to purchase the license, before he could lawfully appropriate to himself the timber that he had secured from the land. At least, the plaintiff submitted to that construction of the contract, and on the 8th of December, following the spring in which he had made staves, tendered the price. The defendant cannot say that that was too late, since he had not in the interval seen fit to revoke the license and offer to the plaintiff amends for so doing.

The number of staves made, and the amount tendered, were matters of inquiry at the trial, and the verdict settled that enough was tendered to pay for the staves, or for the license to cut them. This was all that the plaintiff was bound by his contract to do, in order, by the terms of the contract, to make the staves his own.

An objection is made that the staves were not inspected and counted by a culler of staves, elected and sworn according to law; but that was not material. Such an officer is not appointed to have a general supervision over all matters and contracts which concern staves, but for a special purpose. He has nothing to do with a contract like this between the owner of standing timber and the person to whom he sells the right to cut it for the manufacture of staves.

The defendant was to receive a sum of money of the plaintiff, depending upon the number of staves which the latter should make from the defendant's timber. For the purpose of determining this number, the intervention of this officer was not necessary.

The demand made by the plaintiff was sufficient, followed as it was by an absolute refusal of the defendant;

since it was manifest that it would have been fruitless to have sought a more appropriate place or season to make one, if the time and place chosen were not in fact as suitable as any. *Pattee* v. ' *Gilmore*, Merrimack, December term, 1846.

It is objected that the staves were counted without notice to the defendant. If there were any evidence that he had been prevented from inspecting the staves, and informing himself of the number, it might have been matter for argument of unfair practice on the part of the plaintiff; but the plaintiff's rights depend upon the facts proved by legal evidence, and not on the defendant's means of verifying them. There was no need of inviting him to see the staves counted.

*Judgment on the verdict.*